```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


AXXA COMMERCE, LLP,            :    Civil A. No. 09-653(NLH)(JS)
                               :
                               :         **OPINION**
          Plaintiff,           :
                               :
     v.                        :
                               :
DIGITAL REALTY TRUST, L.P.,    :
et al.,                        :
          Defendants.          :


**APPEARANCES:**

STEVEN D. SCHERZER
HOWARD ELLIS DRUCKS
COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.
1125 ATLANTIC AVENUE, THIRD FLOOR
ATLANTIC CITY, NJ 08401-4891

     On behalf of plaintiff

MATTHEW J. BEHR
RICHARD L. GOLDSTEIN
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
200 LAKE DRIVE EAST
SUITE 300
CHERRY HILL, NJ 08002

     On behalf of defendants DIGITAL REALTY TRUST, L.P. and
DIGITAL 210 TUCKER, LLC

ELIZABETH J. HAMPTON
KRISTA FRANKINA FIORE
HERSKOWITZ & HAMPTON, LLC
1811 HADDONFIELD-BERLIN ROAD
CHERRY HILL, NJ 08003

     On behalf of defendants BANDWIDTH EXCHANGE BUILDINGS, LLC
doing business as ST. LOUIS MEET-ME-ROOM, BEB-210, LLC and
BEB-900, LLC

JAMES RICHARD COSTELLO , II
SCHNADER, HARRISON, SEGAL & LEWIS, LLP
220 LAKE DRIVE EAST
SUITE 200
```

CHERRY HILL, NJ 08002-1165

JAMES F. ADAMS (pro hac vice)
PASSMAN & JONES
1201 ELM STREET, SUITE 2500
DALLAS, TX 75270-2599

    On behalf of CAPSTAR COMMERCIAL REAL ESTATE SERVICES

**HILLMAN**, District Judge

    This case concerns a breach of an agreement for space in a St. Louis, Missouri building which provides facilities for web hosting services. Presently before the Court are defendants' motions to dismiss plaintiff's claims against them for lack of personal jurisdiction and/or improper venue. In the alternative, two sets of defendants have moved to have this case transferred to the Eastern District of Missouri on *forum non conveniens* grounds.[1] For the reasons expressed below, defendants' motions for transfer will be granted.

## BACKGROUND

    In June 2007, plaintiff Axxa Commerce, LLC ("Axxa"), a New Jersey limited liability company with a principal place of business in Egg Harbor Township, New Jersey, was in need of additional physical space for its Internet web hosting and full web server management services. During that summer, Axxa communicated with a representative of defendants Bandwidth

---

[1] Defendant Capstar has only moved to dismiss based on improper service and failure to state a claim. The Court will not address Capstar's motions on those bases because New Jersey is not the proper forum for this matter.

Exchange Buildings, LLC, BEB-210, LLC, and BEB-900, LLC (collectively "Bandwidth"), which, at that time, owned a building at 210 North Tucker Boulevard, St. Louis, Missouri that provided telecom and data center space. In August 2007, Axxa and Bandwidth entered into a Rackspace License Agreement that gave Axxa a license to use certain space within the building. The agreement provided that in addition to granting Axxa a license to use certain space, the building owner would provide adequate power, air conditioning, fire suppression, lighting, security, and services to aid in cross-connect services to other licensees. The agreement was to commence on September 1, 2007 and last five years. Thereafter, the agreement was to automatically renew year-to-year. Shortly after Axxa entered into the agreement with Bandwidth, Bandwidth sold the building to defendant Digital Realty Trust, Inc., and assigned its leases to defendant Digital 210 Tucker, LLC (collectively "Digital").

In its complaint, Axxa claims that between September 2007 and December 2007, all of the defendants, including defendant Capstar[2], which provides leasing management services for the building, breached the agreement, and breached the covenant of good faith and fair dealing, by failing to make the necessary improvements required by the agreement with regard to power,

---

[2]The proper identity of Capstar is "Capstar Commercial Real Estate Services," with the assumed name of Capstar Services of Missouri, LLC.

3

cooling, and fire suppression. Axxa also claims that defendants overcharged it for certain contractual items, as well as failed to deliver the premises in a timely manner (Axxa claims that defendants did not deliver the premises until December 2007). Because of this breach, Axxa claims that it lost millions of dollars due to lost profits, depreciation of hardware, employment of a product manager, and other costs relating to the delay.

Axxa also claims in its complaint that Bandwidth made fraudulent misrepresentations regarding its ability to make the improvements and deliver the premises on time, and that because of these misrepresentations, it was fraudulently induced to enter into the contract.

Defendants have moved to dismiss Axxa's claims against them for lack of personal jurisdiction and improper venue. In the alternative, defendants have moved for the transfer of the case to the Eastern District of Missouri on *forum non conveniens* grounds. Axxa has opposed Bandwidth's and Digital's motions, but it has not opposed Capstar's.

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**B. Analysis**

Axxa, a New Jersey limited liability company, sought out web hosting space in a building located in Missouri. It contracted to lease that space with Missouri companies, all of which at the time[3], and the individuals who comprise those companies, had no connection with New Jersey whatsoever, and it did so through an agent who lives in Missouri. All of the obligations under the agreement were to be performed in Missouri, all breaches Axxa alleges occurred in Missouri, and Missouri law by contract applied to any dispute. Despite Axxa's choice of forum in this Court, this case belongs in Missouri.

The Supreme Court has instructed that a district court may consider whether to dismiss or transfer[4] a case based on *forum non conveniens* grounds without having to address personal jurisdiction issues. Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007) ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial

---

[3]Digital Realty, which succeeded to the original agreement, owns several properties in New Jersey.

[4]Lafferty v. St. Riel, 495 F.3d 72, 79 (3d Cir. 2007) (quoting Sinochem, 549 U.S. at 430) (noting that Congress codified the doctrine of *forum non conveniens* in §§ 1404(a) and 1406(a), and "has provided for transfer, rather than dismissal," when a transferee venue is the "more convenient place for trial of the action").

economy so warrant."). This is because if personal jurisdiction involves an arduous inquiry, "and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." Id. at 436.

Here, the determination of personal jurisdiction over the defendants involves a complicated analysis of the corporate structures of defendants, their obligations and liabilities to and for one another, the nature of electronic communications and whether they constitute purposeful availment to a particular state, and whether Axxa's tort claim provides a basis for personal jurisdiction. Indeed, several of these complicated issues are acknowledged by Axxa in its brief (see Pl. Opp. at 15, "[F]undamental questions remain regarding the nature of the transaction between Digital Realty and Digital 210 Tucker or other related entities."; "[There is a] complex of issues raised by the relationship between Digital Realty and Digital 210 Tucker . . . ."; Pl. Opp. at 17, "Guller [the managing member and an owner of the Bandwidth entities] was the central figure in the Bandwidth/Digital Realty transaction *and* the Bandwidth/Axxa Transaction[, and] [t]he motivation underlying Guller's role as an intermediary and advocate in two parallel and interrelated transactions is unclear at this time."), and it accordingly requests discovery relating to jurisdiction (see Pl. Opp. at 18, "[I]t would be premature for this Court to rule on the

6

jurisdictional questions without allowing jurisdictional discovery and appropriate fact-finding."). Delaying the determination of personal jurisdiction and ordering the undertaking of jurisdictional discovery, however, would only serve to prolong the inevitable--that even if the Court were to conclude that personal jurisdiction exists over these defendants, the case would still be transferred to the more appropriate forum of Missouri.

A court has discretion to dismiss or transfer a case on *forum non conveniens* grounds when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems. Sinochem, 549 U.S. at 432 (citations omitted). "Dismissal for *forum non conveniens* reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." Id. (citation and quotations omitted). *Forum non conveniens* has been characterized as essentially "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." Id.

7

(citation and quotations omitted).[5]  The alternative forum requirement is usually satisfied where the defendant is amenable to process in the another jurisdiction.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-07 (1947)); 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

The Supreme Court has "provided a list of 'private interest factors' affecting the convenience of the litigants, and a list of 'public interest factors' affecting the convenience of the forum."  Piper, 454 U.S. at 241 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947)).  The private factors include:

> the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

Id. (citing Gilbert, 330 U.S. at 508-09) (internal citations

---

[5] As with the personal jurisdiction issue, the Court makes no finding on whether venue is proper here.  Even if venue is not properly laid here, the Court has the authority to transfer the action.  28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

8

omitted).

The public factors include:

the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Id. (citing Gilbert, 330 U.S. at 508-09) (internal citations omitted).

Axxa does not dispute that the majority of factors weigh in favor of Missouri as a more convenient forum. The premises and almost all of the proof and witnesses are located in Missouri, and Missouri law governs the dispute. Axxa, however, argues that justice would not be served if its case is not permitted to remain in its forum of choice. Axxa argues that it would be unjust to transfer the case to Missouri because defendants pursued and secured its business then subsequently failed to serve its interests, and a transfer would reward defendants for their "mercantile impropriety," thus further "exacerbating the injustice already done to" Axxa. (Pl. Opp. Br. at 23.) Further, Axxa argues that it would be unjust because it is a small business and it would suffer having to attend to the litigation in Missouri while also running its business in New Jersey. (Id.) Axxa further contends that New Jersey's interest in protecting

9

its citizens from "opprobrious behavior by foreign corporations" also overrides the weight of factors in favor of Missouri as the forum for this case.  (Id. at 25.)

Even though it is true that a defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum, Sinochem, 549 U.S. at 432, a "citizen's forum choice should not be given dispositive weight, however," Piper, 454 U.S. at 256 (citations omitted).  "Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum.  As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."  Id.  Thus, simply because Axxa chose its home forum of New Jersey to pursue its claims, that factor cannot alone outweigh the other factors.

With regard to Axxa's injustice argument, even though the Court is mindful of the obligations of a small business and the logistical burdens of litigating claims in another state, it was Axxa that decided to rent office space in Missouri rather than in New Jersey or a neighboring state. By doing so, it was aware that any issues relating to the physical space and equipment would have to be handled there.  Correspondingly, Axxa was aware that if it breached the agreement, it could be hailed into court

in Missouri by defendants.  Further, even though Axxa argues against the transfer of its case because it would not be onerous on defendants to come to New Jersey in light of the fact that most of the proof is documentary, and could be exchanged via overnight shipping, email, and facsimile (Pl. Opp. at 24), that argument applies with equal force to Axxa.

With regard to New Jersey's interest in protecting its citizens in its courts, that general proposition may be true, but in this case, New Jersey has very little at stake.  Axxa decided to rent space in Missouri, and contracted to apply Missouri law to any dispute.  Thus, although New Jersey has an interest in protecting a citizen from foreign entities who allegedly act fraudulently and breach contracts, here, New Jersey law is not vindicated,[6] and the situs of any harm is not in New Jersey.

---

[6]The Court makes no decision on whether the contractual choice of law provision would apply to Axxa's fraudulent inducement claim.  See, e.g., Black Box Corp. v. Markham, 127 Fed. Appx. 22, 25 (3d Cir. 2005) (stating that depending on the wording of the choice of law clause, certain choice of law provisions may be construed "in a manner that limits their application to the underlying agreement itself, and not to related fraud or non-contractual claims); cf. PTI Services, Inc. v. Quotron Systems, Inc., 1995 WL 241411, *9 (E.D. Pa. 1995) (finding that "the tort allegations--fraudulent inducement to enter into the contract and negligent misrepresentation--are inextricably intertwined with the formation of the agreement itself, and the choice of law clause must govern); Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1392-93 (8th Cir. 1997) (explaining that even a narrow choice of law provision, providing that the contract "shall be deemed entered into within and shall be governed by and interpreted in accordance with the laws of" a particular state, "can govern tort claims arising out of the parties' performance under the contract

Conversely, Missouri has a more significant interest in this case because its law is at stake, its citizens have allegedly acted violative of that law, and the harm occurred in Missouri.[7]

---

or closely related to the interpretation of the contract, including claims of fraud in the inducement or misrepresentation"). The Court also makes no decision on whether Axxa will be subject to the election of remedies doctrine. Merchants Indem. Corp. v. Eggleston, 179 A.2d 505, 513 (N.J. 1962) ("When a contract is obtained by fraud, the law grants the injured party a choice. He may rescind or affirm. If he rescinds, he must return what he received . . . . On the other hand, he may choose to affirm the contract, whereupon he retains the consideration he received and has as well a claim for money damages for deceit . . . . But the defrauded party must thus elect which course he wishes to follow. He cannot pursue both. If he elects to continue with the contract, the election is final and the contract is affirmed, not because he wants it to be, but because the law makes it so. And if by his conduct he affirms the contract, he cannot be heard to say that he did not 'voluntarily' or 'intentionally' relinquish his right to call of the deal."); Puder v. Smith, 139 A. 23, 24 (N.J. 1927) ("[W]here a party has paid money on a contract entered into through fraudulent misrepresentation, he may maintain an action for deceit against the person guilty of fraud; or he may waive the fraud and proceed for a breach of the original contract; or, having legally rescinded the contract, he may recover back whatever he has paid upon it."); but cf. Trimble v. Pracna, 167 S.W.3d 706, 711 (Mo. 2005) (discussing Davis v. Cleary Bldg. Corp., 143 S.W.3d 659, 669 (Mo. App. 2004) and the distinction between election-of-remedies and election-of-theories doctrines, and relating "plaintiffs' claims for breach of contract and fraudulent misrepresentation were not inconsistent legal theories and, as such, did not require election of remedies or election of recovery. . . . A plaintiff is only entitled to be made whole once, however, and the election of theories doctrines are intended to prevent a plaintiff from recovering more than one full recovery for the same harm.").

[7]In the context of the issue of personal jurisdiction, Axxa claims that defendants "purposefully availed" themselves to New Jersey by actively soliciting its business, and therefore defendants have committed harm in New Jersey. Without commenting on which party first courted the other, the Court notes that even if it is determined that the tort of fraudulent inducement was

Consequently, Axxa's argument regarding how the transfer of its case to Missouri would be unjust to it and the State of New Jersey is unpersuasive.

## **CONCLUSION**

Based on the foregoing, it is clear that the public and private interests invoked by this case are best served by the transfer of this action to the Eastern District of Missouri. An appropriate Order will be entered.

Date: October 8, 2009             s/ Noel L. Hillman
                                  NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

---

inflicted in New Jersey, all other alleged conduct relating to the contract occurred in Missouri.

13